UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

EVELYN S. BUIE,

                            **Plaintiff,**

                 **v.**                                        **3:03-CV-781**
                                                                  **(FJS/DEP)**

**UNITED METHODIST HOMES – HILLTOP
CAMPUS,**

                            **Defendant.**
_____

**APPEARANCES**                                           **OF COUNSEL**

**STONE AND STONE**                          **MICHELLE E. STONE, ESQ.**
P.O. Box 118
Vestal, New York 13851-0118
Attorneys for Plaintiff

**LEVENE, GOULDIN &**                **PATRICIA M. CURTIN, ESQ.**
**THOMPSON, LLP**
P.O. Box F-1706
Binghamton, New York 13902-0106
Attorneys for Defendant

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

      Plaintiff brought this action claiming that Defendant had violated Title VII, 42 U.S.C. § 2000e *et seq*., as amended, by terminating her employment as a Certified Home Health Aide based solely upon her race.

      Defendant is a not-for-profit, church-related organization that operates a supervised residential facility providing nursing and daily living assistance to the elderly. Defendant

employed Plaintiff, an African-American female, as a Certified Home Health Aide, from August 11, 1999, through March 31, 2001, at which time Plaintiff left Defendant's employ to pursue her own entrepreneurial venture. Defendant rehired Plaintiff on January 14, 2002, and terminated her employment on August 12, 2002.

The Court held a bench trial in this matter on February 27 and 28, 2006. At the trial, Plaintiff was the only witness who testified on her behalf. Defendant called the following witnesses, all of whom were Defendant's employees: Mary Anne Carasea, Senior Assistant Administrator; Jacqueline Lindsley, Staff Coordinator; Maureen Tanner, 3-11 Supervisor in the Adult Care Facility; and Carl Gaudinier, Director of Human Resources. At the end of the trial, the Court reserved decision and provided the parties with an opportunity to file post-trial briefs and motions.

Pursuant to Rule 52(a) of the Federal Rules of Civil Procedure, the Court makes the following findings of fact and conclusions of law.

## II. DISCUSSION

**A.    Findings of fact**

1. Defendant rehired Plaintiff as a Certified Home Health Aide on January 14, 2002, and terminated her employment on August 12, 2002.

2. During the period from January 14, 2002, until August 12, 2002, Plaintiff had unscheduled absences on February 27-28, 2002, March 18, 2002, March 23, 2002, July 16, 2002, August 7-8, 2002, and August 10-11, 2002. She was also tardy on February 26, 2002, April 15, 2002, and July 5, 2002.

3. At the time of her rehire, Plaintiff's Director Angel Hernandez told her that attendance was important and that he expected her to come to work.

4. On June 6, 2002, Plaintiff received an "unsuccessful" Introductory Evaluation due to her unacceptable attendance record. Defendant gave Plaintiff the lowest possible score for "Attendance and Punctuality" and advised her on the evaluation form that "improvement is necessary to meet job standards." Defendant extended Plaintiff's probationary period of employment to July 1, 2002, in order for her to improve her attendance.

5. Defendant employed Laura Moore and Jacqueline Mosher as Activities Leaders. Ms. Moore's supervisor was Linda Campbell, and Ms. Mosher's supervisor was Fay Clark, neither of whom ever supervised Plaintiff.

6. Ms. Moore and Ms. Mosher are Caucasian.

7. Activities Leaders do not provide hands-on care to residents, and they are not under the supervision of the nursing staff. They are responsible for the recreational leisure time of the residents, and they work the day shift on Mondays through Fridays.

8. Certified Home Health Aides are licensed/certified by the State of New York. They provide hands-on care to residents; they prepare the residents for bath time, undress them, dress them, bathe them, transfer them to and from their rooms, take them to and from the dining room for supper, perform certain treatments, answer bells, and tidy up the rooms at the end of a shift. Certified Home Health Aides work all three shifts, seven days a week. They work in a two-week rotation, every other weekend, and every other holiday.

9. Plaintiff's supervisors were Maureen Tanner and Gerry Yetter, both of whom were Licensed Practical Nurses. Neither Ms. Tanner nor Ms. Yetter had any part in Plaintiff's

termination. Angel Hernandez, who hired Plaintiff and made the decision, together with the Director of Human Resources, to terminate Plaintiff's employment, is not Caucasian.

10. Plaintiff called Defendant to report that she would not be at work on August 7, 2002, and August 8, 2002.

11. Although Plaintiff testified that she called the facility at around 9:30 p.m. on August 9, 2002, spoke with Maureen Tanner and told her that she would not be at work on August 10, 2002, the Court finds more credible Ms. Tanner's testimony that she did not work on August 9, 2002, and did not talk to Plaintiff that day. The Court also finds credible Ms. Lindsley's testimony that she marked on the schedule sheet next to Plaintiff's name that she was a "no show" on August 10, 2002, which meant that Plaintiff did not call.

12. Although Plaintiff testified that she called the facility at about 8:30 a.m. on August 11, 2002, and told Jackie Lindsley that she would not be at work that day, the Court finds more credible Ms. Lindsley's testimony that she marked on the schedule next to Plaintiff's name that she was a "no show" on August 11, 2002, which meant that Plaintiff did not call.

13. With respect to the issue of Attendance, Defendant's Employee Handbook provides, in pertinent part, that, "[i]f you are unable to report to work, you are expected to call the facility prior to the start of your shift . . . . Repeated absence from work or tardiness will result in disciplinary action up to and including discharge." *See* Defendant's Exhibit "7." The Employee Handbook further provides that, "[w]hen you cannot report to work . . . you must call your immediate supervisor according to department specific procedures in advance of your scheduled starting time if you will be absent from work . . . . You must call your supervisor on each consecutive day of absence . . . . If you are absent from work two consecutive scheduled days

without notifying your supervisor, you will be considered to have voluntarily resigned." *See id.*

14. Defendant's Employee Handbook contains a "Coaching and Counseling Procedure," which provides, in pertinent part, that "[c]oaching may include one-on-one meetings with the employee and supervisor to correct a problem.  Counseling may include verbal warning, written warnings, reduction in scheduled hours, suspension without pay or termination, depending on the circumstances of the incident.  One or more of these steps may be skipped if the problem is particularly serious or persistent." *See id.*

15. Defendant's Employee Handbook contains a "Termination Without Advanced Warning" section which provides, in pertinent part, that "[t]here are some actions that warrant immediate termination in the best interest of the facility.  All of the surrounding facts and circumstances are considered in making this decision.  The following is a list of examples of some of the acts of misconduct that may be cause for such termination. . . . 9. Being absent from the job for more than one consecutive day without notification may be subject to termination unless circumstances beyond your control prevent notification. . . . 14. Job related problems during introductory or probationary period of employment." *See id.*

16. Plaintiff received a copy of Defendant's Employee Handbook and was made aware of Defendant's attendance policies at her orientation upon her rehire.

17. Defendant's department-specific Attendance policy applicable to Certified Home Health Aides provides that Certified Home Health Aides are required to call the facility no less than two hours prior to the start of their shift if they are unable to work.

**B.     Conclusions of law**

A court analyzes employment discrimination claims under Title VII using the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). The first step requires a plaintiff to establish a *prima facie* case of discrimination by demonstrating "'(1) that [she] belonged to a protected class; (2) that [she] was qualified for the position [she] held; (3) that [she] suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent.'" *Henderson v. Whiting Door Mfg. Corp.*, No. 06-CV-0222, 2008 WL 821983, *5 (W.D.N.Y. Mar. 26, 2008) (quoting *Feingold v. New York*, 366 F.3d 138, 152 (2d Cir. 2004)).

One way that a plaintiff may establish an inference of discrimination is by showing that the defendant treated her differently than it treated similarly situated employees who were not members of her protected class. *See id.* (citing *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 82 (2d Cir. 2001)). Among the factors that a court may consider to determine if employees are similarly situated to the plaintiff are "their 'specific work duties, education, seniority and performance history.'" *Trotman v. CBS Radio Inc.*, No. 06 Civ. 3389, 2007 WL 2827803, *9 (S.D.N.Y. Sept. 27, 2007) (quotation omitted). "For employees to be considered similarly situated, 'their circumstances need not be identical, but there should be a reasonably close resemblance of facts and circumstances . . . . What is key is that they be similar in significant respects.'" *Id.* (quoting *Lizardo v. Denny's, Inc.*, 270 F.3d 94, 101 (2d Cir. 2001)).

If the plaintiff meets her burden to establish a *prima facie* case, this "'creates a presumption that the employer unlawfully discriminated.'" *Springle v. Metro. Transp. Auth.*, No. 06 Civ. 734, 2008 WL 331362, *12 (S.D.N.Y. Feb. 1, 2008) (quoting *James v. N.Y. Racing*

*Ass'n*, 233 F.3d 149, 154 (2d Cir. 2000)).  Then, the burden shifts to the defendant, who is required to "articulate a legitimate, non-discriminatory reason for its adverse action."  *Id.* (citations omitted).  "That burden 'requires the defendant to produce admissible evidence showing "reasons for its actions which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action . . . ."'"  *Id.* (quoting *Eatman v. United Parcel Serv.*, 194 F. Supp. 2d 256, 263 (S.D.N.Y. 2002)).

Once the defendant meets its burden to articulate a non-discriminatory reason for its action, "the presumption [of discrimination] 'drops out of the picture.'"  *Id.* (quoting *St. Mary's Honor Ctr.*, 509 U.S. at 511).  Plaintiff must then show that the defendant's "proffered reason is a pretext for discrimination."  *Id.* (citation omitted).  When the defendant proffers an explanation and the plaintiff attempts to refute it, the court is required to "'examin[e] the entire record to determine whether the plaintiff could satisfy [her] "ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff."'"  *Id.* (quoting *Schnabel v. Abramson*, 232 F.3d 83, 90 (2d Cir. 2000)).

Although Plaintiff established the first three elements of her *prima facie* case of discrimination – that she was a member of a protected class, that she was qualified for the position that she held, and that she suffered an adverse employment action – she did not establish the fourth element; i.e., that Defendant's decision to terminate her employment occurred under circumstances giving rise to an inference of discrimination.

Plaintiff attempted to establish this last element by showing that Defendant treated her differently than it treated similarly situated employees who were not members of her protected class.  However, the only two such employees whom she identified – Laura Moore and

Jacqueline Mosher – were not similarly situated. Unlike Plaintiff, who was a Certified Home Health Aide, both Ms. Moore and Ms. Mosher were Activities Leaders. In addition, unlike Ms. Moore and Ms. Mosher, Plaintiff was certified/licensed by the State, had different job responsibilities, worked a different shift, was required to work every other weekend and every other holiday, was supervised by the nursing staff, and was responsible for hands-on patient care.

Therefore, because Plaintiff has failed to identify any similarly situated employees whom Defendant treated differently than it treated her, the Court finds that Plaintiff has failed to meet her initial burden to establish a *prima facie* case of discrimination.

Alternatively, even if the Court were to find that Plaintiff met her burden to establish a *prima facie* case of discrimination, Defendant proffered a non-discriminatory reason for terminating Plaintiff's employment – her poor attendance record. Defendant adduced evidence at trial that conclusively established that Plaintiff had unscheduled absences on February 27, 2002, February 28, 2002, March 23, 2002, May 18, 2002, July 16, 2002, August 7, 2002, August 8, 2002, August 10, 2002, and August 11, 2002. In addition, Plaintiff was tardy on February 26, 2002, March 23, 2002, April 15, 2002, May 18, 2002, and July 5, 2002.

Moreover, the Court finds credible Ms. Tanner's testimony that she did not work on August 9, 2002, and did not speak to Plaintiff on that date about not coming to work on August 10, 2002, and Ms. Lindsley's testimony that she marked "no show" next to Plaintiff's name on the schedule for August 10, 2002, and August 11, 2002, because Plaintiff did not call to say that she would not be at work on those days.

Furthermore, the Court finds that Plaintiff produced no evidence at trial to demonstrate that Defendant intentionally discriminated against her because of her race. In fact, the evidence

was entirely to the contrary. The evidence at trial demonstrated that Plaintiff had continuous problems with her attendance from the time that Defendant rehired her in January 2002, until Defendant terminated her employment in August 2002. In addition, on June 6, 2002, Plaintiff received an "unsuccessful" Introductory Evaluation which documented her attendance problems. Although Defendant extended Plaintiff's probationary period of employment to July 1, 2002, to provide her with an opportunity to improve her attendance, Plaintiff showed no improvement; rather, she was tardy once and had five unscheduled absences between June 7, 2002, and August 12, 2002.

In addition, Plaintiff admitted at trial that she was aware that attendance was important and that she needed to come to work when she was scheduled. She also acknowledged that she received Defendant's Employee Handbook and was aware of Defendant's general attendance requirements as well as the department-specific requirement that she call the facility at least two hours before her shift if she was not able to work that day. As noted, the credible evidence at trial indicated that she failed to call the facility to report that she would not be able to work on August 10, 2002, and August 11, 2002. Under such circumstances, Defendant was permitted, under its "Termination Without Advanced Warning" policy, to terminate Plaintiff without any notice.

Furthermore, Defendant's Employment Handbook provided that, although "[c]ounseling may include verbal warning, written warnings, reduction in scheduled hours, suspension without pay or termination, . . . **one or more of these steps may be skipped if the problem is particularly serious or persistent**." *See* Defendant's Exhibit 7 (emphasis added). Given the number of unexcused absences that Plaintiff had, there is ample evidence to support Defendant's

-9-

decision to terminate her based upon her poor attendance record with or without notice. Significantly, there is also absolutely **no** evidence that Plaintiff's race played any role in Defendant's decision to terminate her employment. Accordingly, the Court finds that Plaintiff has failed to meet her ultimate burden to prove that Defendant intentionally discriminated against her.

### III. CONCLUSION

After carefully reviewing all of the evidence adduced at trial, the parties' post-trial submissions, and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that the Clerk of the Court shall enter judgment in favor of Defendant and close this case.

**IT IS SO ORDERED.**

Dated: June 12, 2008
       Syracuse, New York

_____
Frederick J. Scullin, Jr.
Senior United States District Court Judge